# United States Court of Appeals for the Federal Circuit

---

## In re: REARDEN LLC, REARDEN MOVA LLC, MO2, LLC, MOVA, LLC,
### *Petitioners*

---

2016-125

---

On Petition for Writ of Mandamus to the United States District Court for the Northern District of California in No. 3:15-cv-00797-JST, Judge Jon S. Tigar.

---

## ON PETITION

---

Before MOORE, HUGHES, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

## O R D E R

The defendants in the underlying case, Rearden LLC, Rearden MOVA LLC, MO2, LLC, and MOVA, LLC, petition for a writ of mandamus to challenge the district court's order compelling them to produce allegedly privileged documents. We conclude we have jurisdiction to decide their petition. We further conclude that petitioners' arguments fail to carry the high burden required on mandamus to overturn the district court's discovery determination. We therefore deny their petition.

BACKGROUND

A.

The central, underlying dispute in this case is one of ownership. Both sides claim ownership of visual effects technology known as "MOVA Contour Reality Capture" or "MOVA." MOVA technology can capture an actor's facial performance for use in motion picture special effects and video games. The technology is secured by trademarks, copyrights, trade secrets, and patents, including U.S. Patent Nos. 7,548,272 (the '272 patent), 7,567,293 (the '293 patent), 7,605,861 (the '861 patent), and 8,659,668 (the '668 patent), and the technology is reflected in hardware, source code, and other physical assets, all of which we will refer to collectively as the "MOVA assets." Both sides assert ownership of the MOVA assets. Because the facts are so fiercely contested, we first set forth the basic versions of events of the parties.

According to respondent Virtue Global Holding Limited's ("VGHL") version of events, Steve Perlman, the head of Rearden LLC and the other petitioners, declined an offer from OL2, Inc. to acquire the MOVA assets and proposed OL2 sell the assets instead to then-Rearden employee, Greg LaSalle. Perlman promised to provide legal resources to get the business off the ground and introduced LaSalle to Rearden's corporate attorney who helped LaSalle establish his own company, MO2, LLC,[1] and negotiate the asset transfer with OL2.

In February 2013, respondent says Perlman demanded that LaSalle turn over the MOVA assets to Rearden.

---

[1] There are two separate entities named "MO2, LLC" involved in this case: this MO2 entity, which we will also refer to as original MO2, and the later-formed "MO2, LLC" that is a named defendant and petitioner.

LaSalle's refusal to turn over the assets resulted in his termination of employment with Rearden. MO2, acting through LaSalle, then sold the MOVA assets to Shenzhenshi Haitiecheng Science and Technology Co., Ltd. ("SHST") on May 8, 2013. SHST hired LaSalle, and through SHST's subsidiary, Digital Domain 3.0 ("DD3"), began to sell the technology to movie and videogame studios. LaSalle then filed paperwork to dissolve MO2. VGHL subsequently obtained the MOVA assets from SHST.

Petitioners agree that the MOVA assets were transferred to MO2 but assert that SHST never obtained ownership. They contend that Perlman and Rearden, not LaSalle, formed original MO2 to acquire the MOVA assets and hired LaSalle to file the corporate paperwork, acquire the MOVA assets, and manage, all on Rearden's behalf. They contend that, pursuant to his employment agreements, LaSalle assigned any rights in the MOVA assets to Rearden. They say that LaSalle was terminated before May 8, 2013, and lacked authority to act on MO2's behalf. And, in any event, they assert, original MO2 transferred the MOVA assets to Rearden MOVA LLC before the purported agreement between LaSalle and SHST.

## B.

This case began in February 2015. SHST filed a complaint in the United States District Court for the Northern District of California, alleging that petitioners had made "false or misleading representations of fact concerning the ownership of the MOVA Assets in a campaign to mislead the public and actual and prospective users and licensees of those assets," including forming a second "MO2 LLC" named entity, falsely recording assignments of the MOVA patents from original MO2 to Rearden MOVA LLC, and making statements that they owned the assets. SHST sought a declaration that it owned the MOVA assets and that petitioners' patent assignments

were invalid. SHST also sought damages for alleged violations of California's false advertising and unfair competition statutes.

Petitioners answered that the claims were waived because SHST "knew that authority from at least one of the Defendants was required for the proper transfer of the MOVA Assets." Petitioners also counterclaimed, seeking a declaration that they owned the MOVA assets, and seeking damages against SHST for, among other things, infringement of the '272, '293, '861, and '668 patents. SHST soon thereafter purportedly sold the assets to respondent VGHL. With SHST stipulating that it would remain in the case as a counterclaim defendant, the district court granted a motion to substitute in March 2016, and VGHL filed an amended complaint raising the same charges as raised in SHST's complaint. Petitioners responded to the amended complaint by filing the same answers and counterclaims against SHST while adding a claim under the California Uniform Fraudulent Transfer Act.

During discovery, respondent moved to compel petitioners to produce documents exchanged between original MO2 and the corporate attorney that Perlman had introduced to LaSalle. The magistrate judge granted the request, concluding that petitioners had not shown they could assert attorney-client privilege on behalf of original MO2 and that LaSalle waived the privilege when he shared the documents with DD3. Petitioners objected to the magistrate judge's ruling. But the objections, the district court determined, did not establish that the magistrate judge's findings and conclusions were clearly erroneous or contrary to law. The district court therefore denied the objections. In doing so, the district court declined to consider an additional declaration from Perlman because it was not before the magistrate judge.

DISCUSSION

A.

We turn first to respondent's threshold argument, namely, that issuing mandamus here would not be "in aid of" our "jurisdiction[]" but instead that of the United States Court of Appeals for the Ninth Circuit. 28 U.S.C. § 1651(a); *see In re BBC Int'l, Ltd.*, 99 F.3d 811, 812–13 (7th Cir. 1996) ("Mandamus anticipates an appeal. . . . But this assumes that the court from which mandamus is sought is the one that will hear the ultimate appeal.").

Our jurisdiction over cases from federal district courts is governed by 28 U.S.C. § 1295(a), which states that the Federal Circuit has appellate jurisdiction "in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents." § 1295(a)(1). "Because the concept of what constitutes a 'compulsory counterclaim' now directly impacts our jurisdiction, it is governed by Federal Circuit law, rather than by that of the regional circuits." *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 644 n.2 (Fed. Cir. 2015).

Congress amended our jurisdictional statute through the America Invents Act to broaden our jurisdiction to include compulsory counterclaims "arising under" patent law. Leahy–Smith America Invents Act, Pub. L. No. 112–29, 125 Stat. 284 (2011). Previously, the Supreme Court's decision in *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 834 (2002), had effectively limited our jurisdiction to patent law claims asserted in a well-pleaded complaint. It was explained that the amendment to our jurisdictional statute, would counteract the potential for *Holmes Group* to "lead to an erosion in the uniformity or coherence in patent law that has been steadily building since the [Federal] Circuit's creation in 1982." H.R. Rep. No. 109-407, at 5 (2006), subsequently "reaffirm[ed]" by H.R. Rep. No. 112-98, at 81 (2011). The

amendment was "intended to provide federal courts, and this court specifically, with a broader range of jurisdiction; that is, with jurisdiction over claims arising under the patent laws *even* when asserted in counterclaims, rather than in an original complaint." *Vermont*, 803 F.3d at 644. But while Congress extended our jurisdiction to ensure uniformity in patent law, that extension did not reach permissive counterclaims. Expressing the concern about the "possib[ility] that a defendant could raise unrelated and unnecessary patent counterclaims simply in order to manipulate appellate jurisdiction," it has been argued that Congress limited our appellate jurisdiction to compulsory counterclaims relating to patent law. 157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl).

To determine whether a particular counterclaim is compulsory, we look to Federal Rule of Civil Procedure 13(a). It provides that a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). The requirement that a party must raise "counterclaims arising out of the same transaction or occurrence . . . was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962) (per curiam). Courts interpreting the scope of Rule 13(a)'s "transaction or occurrence" test "generally have agreed that these words should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a)." 6 Wright & Miller, Federal Practice & Procedure § 1410, at 50–51 (3d ed. 2010).

"[O]ur court has utilized three tests to determine whether the 'transaction or occurrence' test of Rule 13(a) is met: (1) whether the legal and factual issues raised by the claim and counterclaim are largely the same; (2) whether substantially the same evidence supports or

refutes both the claim and the counterclaim; and (3)
whether there is a logical relationship between the claim
and the counterclaim." *Nasalok Coating Corp. v. Nylok
Corp.*, 522 F.3d 1320, 1325 (Fed. Cir. 2008); *see also In re
EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012). Here,
the claims and counterclaims involve the same patents,
they share overlapping legal and factual issues, and
substantially the same evidence could refute both the
claims of ownership and the counterclaims of infringe-
ment. The patent infringement counterclaims share a
critical factual dispute with plaintiff's[2] state law claims:
whether SHST obtained ownership of the MOVA assets
on May 8, 2013. To make a case for patent infringement,
counterclaimants will need to show that they, not re-
spondent, own the MOVA assets. The success of plain-
tiff's state law claims will similarly depend on how these
factual issues are resolved. Moreover, the infringement
claims rely in part on SHST's unauthorized use of the
disputed MOVA assets, including physical assets, whose
ownership is in dispute. So the claims and counterclaims
share a close, logical relation: the ownership and rightful
use of the technology claimed and disclosed in the MOVA
patents. *See Vermont*, 803 F.3d at 644. And plaintiff's
claims and petitioners' counterclaims share substantial

---

[2]    While the district court subsequently entered de-
fault against SHST for not participating in discovery and
set aside its substitution order, now allowing VGHL to
assert the claims only as intervenor, we still look to the
plaintiff's operative complaint and the counterclaims at
the time of filing to determine jurisdiction. *See Jang v.
Boston Sci. Corp.*, 767 F.3d 1334, 1338 (Fed. Cir. 2014)
("[T]he Federal Circuit's exclusive appellate jurisdiction is
predicated on the cause of action and the basis of the facts
as they existed at the time the complaint or any compul-
sory counterclaim was filed.").

evidentiary overlap. *See Nasalok*, 522 F.3d at 1325. Petitioners' counterclaims thus arise from the same transaction or occurrence as plaintiff's claims. *See* Fed. R. Civ. P. 13(a). Finally, we note that concerns about not allowing defendants to manipulate jurisdiction through the addition of permissive counterclaims are not implicated here. *See* 157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl). Rather, the counterclaims arise out of, and are indeed contingent upon, the very dispute and the same patent rights asserted in the complaint. We thus find petitioners' patent infringement counterclaims to be compulsory. As such, we have jurisdiction over any appeal of these claims and, hence, jurisdiction over this petition.

We note that this case stands in contrast to one where a plaintiff brings a suit contesting patent ownership and defendants have an infringement claim that matures after the filing of the complaint. In that situation, defendants are permitted to bring that claim in a later suit or, under Rule 13(e), to seek leave to add the claim. *See* Fed. R. Civ. P. 13(e). The rule provides that "[t]he court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." *Id.* That determination is, however, case specific. But here, where petitioners counterclaimed that plaintiff infringed the very patents over which both parties seek a declaration of ownership, and where the alleged infringing activity was known by petitioners at the time of filing, petitioners' claims are compulsory counterclaims.

## B.

Applying regional circuit law, we review a denial of a request for an evidentiary hearing and a denial to supplement the record for an abuse of discretion, *see United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000), and the district court's factual findings for clear error, *United*

*States v. Graf*, 610 F.3d 1148, 1157 (9th Cir. 2010). Moreover, because petitioners seek relief by way of mandamus, our review is particularly deferential: we will overturn the district court's determinations on these issues only upon a showing of a "clear and indisputable" right to relief and no adequate alternative legal channels through which petitioners may obtain the same relief. *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 403 (1976). Petitioners have fallen short of meeting that standard.

Petitioners first argue that the district court erred on review of the magistrate judge's order in not accepting a supplemental declaration from Perlman and not holding an evidentiary hearing on the issue. Petitioners, however, have not shown any error in these regards that is mandamus-worthy. While a district court may accept additional evidence and hold an evidentiary hearing, no case, including those cited by petitioners, holds that such a hearing or supplementation is a requirement. *See Howell*, 231 F.3d at 621 ("[A] district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation"); *see also id.* at 620 (discussing hearings).

Petitioners, moreover, have not shown a clear abuse of discretion on the part of the district court in refusing their requests. The magistrate judge granted petitioners' request to consider Perlman's first declaration that was submitted to address the central issue in this discovery dispute—the ownership of the MOVA assets and control of original MO2 prior to when LaSalle entered into an agreement to sell the MOVA assets to SHST. Petitioners failed to explain to the district court why they could not have submitted any added information to the magistrate judge or explain why a hearing in addition to the one held by the magistrate judge was necessary.

Petitioners also suggest that the magistrate judge and district court erred in not deferring a ruling on the privi-

lege issue until after conclusively resolving who controlled the original MO2, and thus who had the right to assert the privilege. Yet petitioners cite no case that suggests that the magistrate judge and district court had no legal authority to enter their orders and render preliminary factual determinations on the ownership issue in order to resolve the privilege issue. Rather, they cite one case, *United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999), which is not on point and states only the basic proposition that "hard cases should be resolved in favor of the privilege, not in favor of disclosure."

Petitioners' remaining arguments largely challenge the district court's conclusion that they could not assert the privilege on behalf of original MO2. Those arguments, at bottom, are attacks on the district court's preliminary factual findings regarding whether Rearden MOVA acquired the MOVA assets from original MO2 before LaSalle entered an agreement with SHST and whether Perlman and Rearden LLC (as opposed to LaSalle only) controlled and managed original MO2 such that they could assert the privilege. We decline to entertain mandamus relief on these arguments because petitioners rely heavily on Perlman's extra-record declaration and petitioners have alternative avenues to obtain meaningful review of these arguments after trial. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009).

Accordingly,

IT IS ORDERED THAT:

The petition is denied.

FOR THE COURT

November 17, 2016                    /s/ Peter R. Marksteiner
          Date                              Peter R. Marksteiner
                                            Clerk of Court